IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

UNITED STATES OF AMERICA

        Plaintiff,

v().

        Case No. 3:03-cr-00253

JASON LOREL MINTER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Jason Lorel Minter's motion to reduce sentence under the First Step Act of 2018.[1] ECF No. 206. In his motion, Minter asks the Court to grant him relief under the Act and to impose a new sentence of time served. For the forgoing reasons, the Court **GRANTS** the motion **in part**.

**I. BACKGROUND**

On October 21, 2003, Detective Paul Hunter with the Huntington Violent Crime Drug Task Force filed a Complaint against Jason Lorel Minter, a.k.a., Jason L. Peet, charging him with possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Compl. ECF No. 1. Based on the Complaint, a warrant was issued for Minter's arrest, and he was arrested the same day.

On November 13, 2003, a federal grand jury convening in Huntington, West Virginia, returned a three-count Indictment against Minter. Indictment, ECF No. 12. Count One charged on or about October 12, 2003, Jason Lorel Minter knowingly and intentionally possessed with intent

---

[1] ECF No. 206 is titled "Memorandum of Defendant Regarding Eligibility for Reduced Sentence Under First Step Act." Because the memorandum asks the Court to reduce Minter's sentence, it is being construed as a motion and will be referred to as such.

to distribute a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count Two charged on or about October 12, 2003, Minter knowingly carried a firearm, to wit, a Smith & Wesson .38 Special revolver, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Count Three charged on or about October 12, 2003, Minter knowingly possessed a firearm, that is, a Smith & Wesson .38 Special revolver, in and affecting interstate commerce. The Indictment further charged that at the time Minter possessed the firearm, he had been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On January 13, 2004, a federal grand jury convening in Charleston, West Virginia, returned a three-count Superseding Indictment against Jason Minter. Superseding Indictment, ECF No. 32. Count One charged on or about October 12, 2003, Jason Lorel Minter knowingly and intentionally possessed with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count Two charged on or about October 12, 2003, Minter knowingly possessed a firearm, to wit, a Smith & Wesson .38 Special revolver, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Count Three charged on or about October 12, 2003, Minter knowingly possessed a firearm, that is, a Smith & Wesson .38 Special revolver, in and affecting interstate commerce. The Superseding Indictment further charged that at the time Minter possessed the firearm, he had been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On January 27, 2004, and January 28, 2004, a jury trial was held. The jury found Minter guilty of all three counts of the Superseding Indictment. Jury Verdict, ECF No. 52. On July 27, 2004, Minter appeared for sentencing before this Court. Sentencing, ECF No. 90. At sentencing,

the Court adopted the Presented Report and Guidelines without change. Statement of Reasons, ECF No. 91.

The presentence report attributed 270.3 grams of cocaine base to Minter (totaling 5,406 kilograms of marijuana equivalent because one gram of cocaine base was equal to 20 kilograms of marijuana equivalent at the time). PSR ¶¶ 12–15. Counts One and Three were "grouped" for purposes of calculating the Guidelines, and the combined adjusted offense level for Counts One and Three was 34. PSR ¶ 41. Additionally, the Court found that Minter qualified as a "career criminal" under U.S.S.G. § 4B1.1, because he was at least 18 years old, Count One was a controlled substance offense, and he had two prior felony "crime of violence" convictions. *Id*. at ¶ 43.[2] The career offender enhancement increased his Guideline offense level to 37. *Id.* His criminal convictions resulted in a subtotal criminal history score of 7, however, two points were added because the offenses were committed less than two years following his release from custody on February 28, 2003 for parole violations in his Aggravated Battery and Aggravated Robbery cases in Illinois. *Id.* at ¶¶ 51–52. His total criminal history score was 9, which established a Criminal History Category of IV; however, because the career offender enhancement applied, his Criminal History Category was raised to VI. *Id.* at ¶ 53. Based on the career offender enhancement, Minter's Guideline range for imprisonment was 360 months to life. *Id.* at ¶ 65; Statement of Reasons.

The Court sentenced Minter to 300 months on Count One and 120 months as to Count Three, with Counts One and Three to run concurrently. Judgment 2, ECF No. 93. Additionally, the Court sentenced Minter to 60 months on Count Two, to run consecutively to Counts One and Three, for a total sentence of 360 months imprisonment. *Id.*

---

[2] The relevant crime of violence convictions were a 1998 conviction out of McHenry County Illinois for Aggravated Battery of a Police Officer and a 1999 conviction out of Kane County Illinois for Aggravated Robbery. PSR ¶¶ 46–47.

Minter appealed his sentence, and on September 8, 2005, the Fourth Circuit affirmed Minter's conviction but vacated the sentence and remanded the case to this Court for resentencing based on the change in the law making the Guidelines advisory in nature. *United States v. Minter*, No. 04-4628, 2005 WL 2172040, at *3 (4th Cir. Sept. 8, 2005).

On November 28, 2005, Minter appeared for re-sentencing. Re-Sentencing, ECF No. 123. After considering the advisory Guidelines, the Court re-sentenced Minter to the same sentence: 300 months of imprisonment on Count One and 120 months of prison on Count Three, to run concurrently, and 60 months of imprisonment on Count Two, to run consecutively to Counts One and Three, for a total sentence of 360 months of imprisonment. Judgment, ECF No. 124. The Court also sentenced Minter to three concurrent 5-year terms of supervised release, for a total term of 5 years. *Id.* Finally, the Court imposed a $5,000 fine and $300 special assessment. *Id.*

## II. LEGAL STANDARD

When a court imposes a sentence of imprisonment, it is considered the final judgment on the matter and the court, as a general prohibition, "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. §§ 3582(b) & 3582(c)(1)(B). However, a court can modify a sentence where it is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

The First Step Act of 2018 states, in relevant part, that a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115–391, 132 Stat. 5194, § 404(b) (2018) (hereinafter "*The First Step Act*"). Section Two of the Fair Sentencing Act increased the quantity of cocaine base, or "crack," which triggers a mandatory minimum penalty. Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010) (hereinafter "*Fair Sentencing*

*Act*"). Section Three eliminated the statutory minimum sentence for simple possession of crack. *Id.* at § 3.

To be eligible, a defendant's sentence must not have been imposed or previously reduced under Sections Two or Three of the Fair Sentencing Act of 2010.[3] *Id.* at § 404(c). Nor can a defendant have been previously denied a reduction under Section 404 of the First Step Act. *Id.* Though a defendant, the Government, or the Court can move for a reduced sentence, individuals are not entitled to a reduction as courts are not required to grant relief under Section 404. *Id.*

This discretion given to courts whether to grant relief is broad and indicative of how authority under this statute can be exercised. Courts in this district and throughout the Fourth Circuit agree that the proper mechanism to seek relief under the First Step Act is 18 U.S.C. § 3582(c)(1)(b). *United States v. Banks*, No. 1:07-00157, 2019 WL 2221620, at *4 (S.D. W. Va. May 22, 2019) (Faber, J.) (citing *United States v. Shelton*, No. 3:07-329, 2019 WL 1598921, at *3 (D.S.C. April 15, 2019) (listing cases)). As such, the language of First Step Act controls the Court's ability to grant relief. *See Wright v. United States*, 425 F. Supp. 3d 588, 595 (E.D. Va. 2019). Under § 3582(c)(1)(B), a court can choose to conduct a simple mechanical reduction of a sentence based on a decreased exposure to statutory minimums and the correlating lower guideline range.

However, courts are not limited by § 3582(c)(1)(B). The First Step Act allows for a court to "impose a reduced sentence" if an individual is eligible. *The First Step Act*, § 404(b). Reading the word "impose" consistently within the United States Code reveals that this equates to the announcement of a convicted person's sentence. *See* 18 U.S.C. §§ 3553(a) and 3582(a). Therefore, the First Step Act grants courts statutory authority to conduct a full resentencing, in addition to the discretion to decide when doing so is appropriate. *See Wright*, 425 F. Supp. 3d at 595. Whether a

---

[3] The Fair Sentencing Act was enacted on August 3, 2010. Thus, the offending act must have been committed before this date.

court decides to resentence a defendant or not, the language of the First Step Act does not require a hearing. *See id.* at 597. It is within the sound judgment of the Court to determine if an evidentiary or sentencing hearing is necessary to address the issues of a particular case.

When considering the statutory authority under the First Step Act, federal courts presume Congress acts in the context of relevant case law. *Abuelhawa v. United States*, 556 U.S. 816, 821 (2009) (citing *Williams v. Taylor*, 529 U.S. 362, 380–81, n.12 (2000)). The Fair Sentencing Act, and its application through the First Step Act, is administered in light of the Supreme Court's decision in *United States v. Booker*, which held mandatory guideline ranges were unconstitutional. 543 U.S. 220, 244–45 (2005). While *Booker* is not retroactively applied on a collateral attack, a court may now vary outside of the guideline range if it chooses to conduct a full resentencing. *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005). This includes variances based on policy disagreements with the Sentencing Guidelines. *Kimbrough v. United States*, 552 U.S. 85 (2007).

Once a defendant is determined to be eligible, the Court must examine the statutory threshold the defendant was convicted under and compare it to the alteration of the applicable law. The Court recognizes that the drug quantity listed in an indictment traditionally tracks the statutory minimums to ensure a defendant's plea or conviction complies with the Sixth Amendment. It is not illogical to speculate that had the Fair Sentencing Act been enacted at the time of a defendant's conviction, the elevated statutory amounts would be listed in the indictment. *See United States v. Blocker*, 378 F. Supp. 3d 1125 (N.D. Fla. 2019) (explaining "indictment-controls" versus "offense-controls" theories and adopting the latter.). Yet to assume such a fact impermissibly alters the indictment and unconstitutionally abridges a defendant's Sixth Amendment rights. *See Alleyne v. United States*, 570 U.S. 99 (2013). In the context of First Step Act cases, this is true whether a court is conducting a full resentencing or not. *See United States v. Smith*, 379 F.Supp.3d 543, 546–

47 (W.D. Va. May 13, 2019). Due to the constitutional considerations, this Court—along with a number of others—adopts an "indictment-controls" interpretation of the First Step Act's impact on a defendant's conviction. *United States v. Springs*, No. 3:05-CR-00042-FDW-1, 2019 WL 3310092 (W.D.N.C. July 23, 2019) (applying *Alleyne v. United States*, 570 U.S. 99 (2013) to First Step Act cases) (listing cases).

### III. DISCUSSION

In reviewing the instant case, the Court considered the pleadings; the original presentence report; the judgment order and statement of reasons; any supplemental material from the Defendant, including any correspondence; and the memorandum submitted by the Probation Office, which includes a summary of the Defendant's institutional adjustments while in the custody of the Bureau of Prisons.

The Court finds, and the parties agree, that Defendant Minter is eligible for consideration of a sentence reduction pursuant to the First Step Act. *See* Resp. of U.S. 1, ECF No. 208. His 2004 conviction for possession with intent to distribute 5 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) is a "covered offense" under the Act, because the statutory penalties for that offense were modified by the Fair Sentencing Act and the offense was committed before August 3, 2010. *See First Step Act*, § 404(b).

Having determined that Minter is eligible for consideration, the Court recognizes that the First Step Act authorizes the Court to sentence defendants anew and enter variances in cases where it deems appropriate. *Wright*, 425 F. Supp. 3d at 595; *United States v. Spotts*, No. CR 3:98-00047-01, 2019 WL 6521981 (S.D.W. Va. Dec. 3, 2019). The Court concludes that this case warrants such a variance.

The parties agree that with the application of the career offender enhancement, Minter's Guideline range remains the same, despite the statutory changes. Mem. of Def. 7, ECF No. 7; Resp. of U.S. 1. A strict application of the Guidelines on Counts One and Three, which are grouped together under Sections 3D1.3 and 3D1.4, would result in an adjusted offense level of 30.[4] The career offender enhancement would increase the offense level to 32. § 4B1.1(b). His total criminal history score remains 9, which establishes a Criminal History Category of IV; however, with the application of the career offender enhancement, Minter's Criminal History Category is raised to VI. *Id*. Finally, the Guidelines state that his controlling Guideline range is 360 to life. § 4B1.1(b)(2); § 4B1.1(c).

Although neither party raised the issue, this Guideline range exceeds the statutory maximum for Minter's crack offense. As explained above, this Court has adopted an "indictment-controls" interpretation of the First Step Act. The Superseding Indictment charged Minter with possession with intent to distribute 5 or more grams of crack cocaine. Superseding Indictment 1. While that offense carried a statutory maximum of 40 years when Minter was convicted and sentenced, the current statutory maximum for that offense is 20 years. *See* 18 U.S.C. § 841(b)(1)(C). Accordingly, the most the Court could lawfully sentence Minter to on Count One is 240 months. With a 60-month consecutive sentence for Count Two, Minter could face a total sentence of 300 months.[5]

---

[4] Based on the Court's finding that 270.3 grams of cocaine base could be attributed to Minter, the base offense level under Count One would be 28. § 2D1.1(c)(6). Count Three provides for a base offense level of 24, because Minter has at least two felony convictions for crimes of violence. § 2K2.1(a)(2). When the counts are grouped, 1 "Unit" is applied to the higher offense level, and 1 Unit is applied to any other grouped offense which is 1 to 4 points less serious. § 3D1.1; § 3D1.4. Here, 2 levels are added to Minter's higher offense level based on presence of 2 Units, making his final offense level for Counts One and Three 30. § 3D1.4.

[5] While it is arguable that the Court could sentence Minter to 300 months on Count Two, the Court is not inclined to increase his sentence on that count of conviction when, as discussed below, his current sentence overstates his culpability.

In considering the memoranda submitted in this case, along with the PSR, the Court finds that the application of career offender enhancement is inappropriate in Minter's case. The enhancement substantially raises both Minter's offense level and Criminal History Category without reference to his actual conduct. Accordingly, the Court is varying out of the enhancement.

Without the career offender enhancement, Minter's amended offense level is $30^6$ and his Criminal History Category is IV. This produces a varied Guideline range of 135 to 168 months. Considering the PSR, the Court finds that Minter's prior crimes were violence-related and that the offenses in this case were committed less than a year after he was discharged from custody from his prior convictions. PSR ¶ 53. Accordingly, the Court concludes that a sentence in the middle of the varied Guidelines is appropriate.

Thus, it is the judgment of the Court that Minter be resentenced to total term of incarceration of 212 months. This sentence is comprised of 152 months on Court One and 120 months on Count Three, to be served concurrently, plus an additional 60 months on Count Two, to be served consecutively to Counts One and Three.

Given Minter's numerous infractions while incarcerated,[7] Probation has recommended that additional special conditions be imposed on Minter. Specifically, Probation has recommended (1) that Minter spend a period of up to six months at a halfway house to help him transition back into the community, and (2) that he shall submit to an evaluation by a qualified mental health professional, approved by the probation officer, who is experienced in treatment of sexual offenders, be required take all medications reasonably related to treatment of his condition, complete all treatment recommendations, and abide by all rules, requirements and conditions

---

[6] *See* Note 3, *supra*.
[7] Minter has had approximately 20 infractions related to inappropriate sexual acts including infractions for engaging in sexual acts, grabbing the buttocks of female staff, masturbating in the presence of female staff, and indecent exposure. Additionally, Minter has numerous infractions for assault, possession of dangerous weapons, and fighting.

imposed by the professional until he is discharged from treatment. Given the sexual nature of many of the infractions, the Court finds that these special conditions are appropriate.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART** Defendant's motion, ECF No. 206. The motion is granted to the extent it seeks a new sentence under the First Step Act but is denied to the extent it requests a sentence of time served. Accordingly, the Court **IMPOSES** a new sentence of 152 months imprisonment on Count One, 120 months on Count Three, to run concurrently Count One, and 60 months on Count Two, to run consecutively to Counts One and Three, for a total term of incarceration of 212 months. The Court further **IMPOSES** a 5-year term of supervised release on Count One, a 5-year term of supervised release on Count Two, and a 3-year term of supervised release on Count Three, to run concurrently, for a total term of supervised release of 5 years. Additionally, the Court **IMPOSES** the following additional special conditions of supervised release:

> (1) Upon his release from prison, Defendant shall be placed at a halfway house for a period of up to six months at the discretion of the probation officer to assist the Defendant in transitioning to the community; and
>
> (2) The Defendant shall submit to an evaluation by a qualified mental health professional, approved by the probation officer, who is experienced in treatment of sexual offenders. The Defendant shall take all medications reasonably related to treatment of his condition, complete all treatment recommendations and abide by all rules, requirements and conditions imposed by the professional. The Defendant must do so until discharged from treatment by the professional. Prior to being required to submit any proposed course of treatment, the Defendant or the United States may seek review by the presiding district judge of any facet of the prescribed course of treatment. The United States and the Defendant shall also have the right to seek review by the presiding district judge of any continuation or discontinuation of such treatment.

The remaining conditions of supervision and the monetary penalties imposed by the Court in its November 29, 2005 Judgment Order remain unchanged. ECF No. 124.

The Court further **ORDERS** any good time credit and the revised release date be calculated within seven days of the entry of this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and the Defendant, the United States Attorney's Office, and the United States Marshals Service.

ENTER: March 12, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE